# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

| | | |
|---|---|---|
| IN THE MATTER OF THE COMPLAINT | : | CIVIL ACTION NO. 2:20-cv-00686 |
| OF B & J INC, AS OWNER AND | | |
| OPERATOR OF MOTOR VESSEL ZOIE | | |
| FOR EXONERATION FROM OR | : | |
| LIMITATION OF LIABILITY | | |
| | | |
| VERSUS | : | JUDGE JAMES D. CAIN, JR. |
| | | |
| MARMAC, LLC, ET AL. | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM ORDER

Before the court is a Motion for Finding of Spoliation of evidence filed by B&J, Inc. Doc.

92. The motion is opposed by DP Concrete Products, LLC; Marmac, LLC d/b/a McDonough

Marine Service; and Kiewit Louisiana Company. Docs. 98, 99.

For the reasons stated, the Motion for Finding of Spoliation should be **DENIED**.

## I.
### BACKGROUND

This limitation action arises from the capsizing of barge M868, which is owned by Marmac

and was rented by DP Concrete. Doc. 92, att. 1, p. 1. DP Concrete manufactured concrete pilings

under contract with Kiewit, which were to be delivered for use in connection with Kiewit's

construction job of the liquified natural gas plant in Cameron, Louisiana. *Id.* DP Concrete hired

the services of the push boat ZOIE to move barges M868 and DH9532 (also owned by Marmac

and rented by DP Concrete), which were loaded with concrete pilings, from Vinton, Louisiana, to

the dock (the Liberty MOF) used to offload materials for Kiewit's Cameron project site. *Id.* B&J

owns and operates the ZOIE. *Id.* After multiple trips between Vinton and Cameron, the crew of

the ZOIE allegedly secured the M868 and the DH9532 at the Liberty MOF on December 28, 2019. *Id.* at pp. 1–2. The M868 capsized on January 2, 2020. *Id.* at p. 2. The capsizing resulted in the loss of cargo from the M868 and the DH9532 as well as damage to the M868, the DH9532, the adjoining dock, and a derrick barge (the SEATTLE) located adjacent to the dock. *Id.* at p. 1.

After the incident, the parties had four opportunities to inspect barges M868 and DH9532.[1] On June 1–6, 2020, Marmac had the M868 repaired so it could be put back into service. Doc. 98, ¶ 11.

On January 21, 2022, two years after the capsize and only six months before the trial date then set,[2] B&J sent out a Request for Inspection to measure, survey, and photograph the steel plate removed from the M868. Doc. 92, att. 1, p. 12. The inspection resulting from this request was of the repaired barge, not the steel plate. *Id.* at 13. Subsequently, Marmac and DP Concrete claimed they were not in possession of any other responsive materials. *Id.*

B&J filed the instant Motion for Finding of Spoliation on May 13, 2022. Doc. 92. Specifically, B&J seeks a finding that both the steel plate and certain surveillance video at the site of the capsizing were destroyed or otherwise made unavailable as the result of inappropriate action or failure to preserve by defendants. The motion is opposed by Marmac and DP Concrete [doc. 98] and Kiewit [doc. 99]. Hearing on this motion was held on October 4, 2022. Doc. 105.

## II.
### LAW AND ANALYSIS

"The spoliation of evidence doctrine governs the intentional destruction of evidence. If a party *intentionally* destroys evidence, the trial court may exercise its discretion to impose sanctions

---

[1] Marmac made the barges available for inspection on January 14–15, 2020, January 22, 2020, February 14, 2020, and February 17, 2020. Doc. 98, ¶¶ 2–8. B&J's expert surveyor attended on the first two of these dates but declined offers to attend on the last two dates. *Id.* at ¶¶ 1–4.

[2] Previously trial was set for January 18, 2022. At a telephone conference held September 29, 2021, to discuss the parties' request for expansion of deadlines for experts, the trial date was moved to June 13, 2022. Doc. 48.

on the responsible party." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x. 565, 573 (5th Cir. 2020) (internal citations omitted) (emphasis in original). A party alleging spoliation must establish that the opposing party *intentionally* destroyed the evidence *for the purpose of depriving other parties of its use*. *Id.* Spoliation of evidence may not be based on negligent, rather than intentional, destruction of evidence. *Herster v. Board of Supervisors of Louisiana State Univ.*, 887 F.3d 177, 189 (5th Cir. 2018). The Fifth Circuit permits an adverse inference or sanctions against a spoliator "only upon a showing of 'bad faith' or 'bad conduct.'" *Coastal Bridge Co.*, 833 F. App'x. at 572 (citing *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005)). Thus, a spoliation claim is without merit if there is no evidence showing bad faith. *Condrey v. SunTrust Bank of Georgia*, 431 F.3d 191, 203 (5th Cir. 2005).

"A spoliation claim has three elements: (1) the spoliating party must have controlled the evidence and been under an obligation to preserve it at the time of destruction; (2) the evidence must have been intentionally destroyed; and (3) the moving party must show that the spoliating party acted in bad faith." *Coastal Bridge Co.*, 833 F. App'x. at 574. As the party seeking the sanction of an adverse inference instruction based on spoliation of evidence, B&J must establish that "(1) the party with control over the evidence had an obligation to preserve it at the time it was destroyed; (2) the evidence was destroyed with a culpable state of mind; and (3) the destroyed evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Id.*

### A. The Steel Plate

B&J suggests that Marmac or DP Concrete had an obligation to preserve the steel plate ultimately replaced on the barge in anticipation of litigation.

Whether a party has an obligation to preserve potential evidence in anticipation of litigation depends on when and if that party should have reasonably anticipated litigation. *Id.* Identifying the trigger for when a party should have reasonably anticipated litigation varies based on the facts and circumstances. *Id.* Here, Marmac owned barges M868 and DH9532, and DP Concrete rented the barges to transport its concrete pilings from its Vinton plant to Kiewit's project site in Cameron. Doc. 92, att. 1, p. 1. The incident involved Marmac's M868 barge capsizing, damage to both barges, and loss of DP Concrete's concrete pilings. We find that these facts and circumstances indicate that both Marmac and DP Concrete should have reasonably anticipated litigation.

The second factor is whether Marmac and DP Concrete acted with a culpable state of mind. "The potential levels of culpability range from no culpability to bad faith, with intervening levels including negligence, gross negligence, and willfulness." *Coastal Bridge Co.*, 833 F. App'x. at 574. The Fifth Circuit has instructed that "a party seeking sanctions is not entitled to an adverse inference instruction unless that party can show that its adversary intentionally and in bad faith disposed of the evidence." *Id.* Courts have declined to find a culpable state of mind when the destruction of evidence could be explained by negligence, incompetence, or reasons other than to deprive the movant of its use. *Knott v. Lowe's Home Centers LLC*, No. 20-CV-01056, 2021 WL 1877377, at *2 (W.D. La. May 10, 2021) (citing *Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 346 (M.D. La. 2006); *Thomas v. Tangipahoa Par. Sch. Bd.*, No. CV 14-2814, 2016 WL 3542286, at *3 (E.D. La. June 29, 2016); *Rogers v. Averitt Express, Inc.*, 215 F. Supp. 3d 510, 520 (M.D. La. 2017)).

For the four reasons discussed below, we find that B&J has failed to show Marmac or DP Concrete acted in bad faith in handling the steel plate. First, there is no evidence the steel plate was destroyed for the purpose of depriving B&J of the opportunity to inspect and measure it. B&J

had four opportunities to inspect, measure, photograph, or perform other tests on the steel while it was attached to the barge. Doc. 98, pp. 6–11. Furthermore, during the almost five months between the incident and the repair of the M868, B&J never once requested another opportunity to inspect the steel. Doc. 98, ¶ 10.

This court has previously held that where a movant for finding of spoliation failed to inspect an allegedly uneven curb for more than a year after the incident giving rise to the suit and where she was in possession of other evidence of the area's condition, such as photographs, the respondent's conduct amounted to no more than negligence. *Knott*, 2021 WL 1877377, at *3. Similarly, here B&J has photographs and an inspection done by its own expert of the steel from January 22, 2020. Doc. 98, ¶¶ 3–4. B&J also has the Hull Diminution Survey conducted by third party NVI, LLC, which analyzed the condition of the steel plate. *Id.* at pp. 12–14.

Second, the purpose for the requested preservation of the cropped steel (in the form of a handwritten note in the joint survey report) was satisfied by the Hull Diminution Survey. B&J insinuates that Marmac and DP Concrete acted in bad faith by failing to preserve the cropped steel plate because DP Concrete's expert, MP Singh, handwrote the above mentioned request for the preservation of the cropped steel on the joint survey report from the January 22, 2020, joint survey. Doc. 100, p. 3. However, MP Singh stated that the Hull Diminution Survey provided all the information the surveyors intended to obtain from examination of the cropped steel plate, which rendered inspection of the cropped steel plate unnecessary. Doc. 98, att. 2, ¶ 9.

Third, Marmac had the M868 repaired on June 1–6, 2020, so that it could be put back into service. The Fifth Circuit has previously found no culpable state of mind where a defendant removed a heater skid from its plant after a fire so it could continue operating the plant. *Coastal*

*Bridge Co.*, 833 F. App'x. at 566–67, 575. There is nothing in the record that indicates Marmac had other intentions when it had the steel plate removed.

Fourth, there is, in fact, no proof that the steel plate was actually destroyed. At the motion hearing, counsel for B&J admitted that they have not contacted the shipyard that conducted the repairs to the M868 to see if it still had the steel plate. Thus, there is no evidence to show that Marmac and DP Concrete acted in bad faith by failing to continue preserving the steel once it was removed from the M868 or that the steel was not preserved by a third party. Because we do not find bad faith or the requisite intent to deprive others of the evidence, there can be no finding of spoliation of the steel plate. *See Coastal Bridge Co.*, 833 F. App'x. at 572–73. Despite this finding, we still move on to weigh the third factor.

The third and final factor is relevance. This factor is generally considered pursuant to the following subparts: "(1) whether the evidence is relevant to the lawsuit; (2) whether the evidence would have supported the inference sought; and (3) whether the non-destroying party has suffered prejudice from the destruction of the evidence." *Knott*, 2021 WL 1877377, at *3 (quoting *Consol. Aluminum Corp.*, 244 F.R.D. at 346). We are skeptical that the steel plate's state on January 21, 2022, over two years after the incident and two years after the initial four inspections, would be relevant to the lawsuit. DP and Marmac suggest that the steel would have corroded in the intervening two years so that the relevance of its state two years after the fact would be highly questionable. Doc. 98, p. 21. B&J does not dispute this inference, and it seems likely and an appropriate consideration.

Finally, B&J has not shown sufficient prejudice suffered from the alleged failure to preserve the steel plate. Although B&J states it would rather have had the opportunity to perform its own survey on the cropped steel plate, it has not shown us why its inability to photograph,

survey, and measure the cropped steel plate[3] amounts to prejudice significant enough to warrant a finding of spoliation, especially in light of all the evidence of the steel's condition already in B&J's possession. Thus, we find that the relevance and prejudice factor does not weigh in favor of a finding of spoliation. For the reasons discussed herein, B&J has not sufficiently shown Marmac or DP Concrete spoliated evidence.

### B. The Surveillance Video

B&J also seeks a finding of spoliation as to certain video evidence. Kiewit had surveillance footage of the barges from the time they arrived on December 28, 2019, until after the capsizing on January 2, 2020. Doc. 92, att. 1, p. 10. A 20–30 second clip of the capsizing was preserved on a cloud-based drive and shared with the parties to this limitation action. Doc. 99, p. 7. Because Kiewit did not produce any other videos, B&J now wants the court to find that Kiewit spoliated the surveillance footage of the days leading up to and the events following the capsizing. Doc. 92. Thus, we will also apply the three-factor test for spoliation of evidence to the surveillance video evidence.

First, we must determine whether Kiewit had an obligation to preserve the surveillance videos in anticipation of litigation. Identifying the trigger for when a party should have reasonably anticipated litigation varies based on the facts and circumstances. *Coastal Bridge Co.*, 833 F. App'x. at 574. Kiewit asserts that it is the only party against whom fault for the incident is ***not*** alleged. Kiewit was a victim of the capsizing, having allegedly suffered damage to its crane barge (the SEATTLE) and the ringer crane that sat on it. Doc. 99, p. 6. Kiewit's barge was alongside the two owned by Marmac, and it did not capsize but merely suffered damage from the other

---

[3] It should be noted that, as previously mentioned, B&J had the opportunity to photograph, survey, and measure the steel plate during the original four surveys, to which B&J was invited. In fact, B&J's surveyor did do these things at the January 22, 2020, survey. Doc. 98, ¶¶ 3–4. In the instant motion, however, B&J complains that it is now unable to do these same things to the cropped steel plate after it was removed from the barge.

barges. *Id*. Kiewit claims it did not get notice of B&J's limitation complaint until July 2020 when Kiewit retained counsel. Doc. 99, p. 9.

However, B&J asserts that Kiewit knew or should have known about the likelihood of litigation sooner because Kiewit suffered property damage and the loss of concrete pilings. Doc. 100, p. 7. B&J further claims that Kiewit knew the videos were relevant to the future litigation because Kiewit viewed the videos the day of the incident and supposedly claimed they would try to enhance the footage. *Id.* Since Kiewit had the only known footage of this incident, which all parties agree resulted in a large amount of damage, we agree with B&J that Kiewit should have known about the likelihood of litigation and the need to preserve the footage soon after the video was first viewed in January 2020. Thus, Kiewit did have an obligation to preserve the steel plate in anticipation of litigation.

The second factor is whether Kiewit acted with a culpable state of mind. As discussed above, this step requires the movant to show the opposing party acted with intent and bad faith when spoliating evidence. *Coastal Bridge Co.*, 833 F. App'x. at 574.

B&J fails to make such a showing. Kiewit claims, and B&J does not disagree, that the missing surveillance videos were preserved and available to the parties on computer equipment at Kiewit's project site. Doc. 99, p. 7. As a result of Hurricane Laura, the computer equipment upon which the footage was stored "suffered extreme devastation" and the videos were not recoverable. *Id.* B&J, however, implies that Kiewit actually saved the surveillance videos through a cloud-based program called InEight. Doc. 100, p. 7. As Kiewit explains, however, absent proof of this claim to the contrary by B&J, InEight is a construction management software, not cloud-based storage. Doc. 103, p. 3, n. 3. B&J makes no direct claims of bad faith. Furthermore, we do not find any bad faith on Kiewit's part because they preserved the footage, but it was destroyed by

Hurricane Laura.  Thus, any prejudice B&J suffers from the loss of this footage is the result of an act of God, not an intentional act by Kiewit.  Because we find no intentional destruction of evidence, we can hardly find bad faith; thus, there is no spoliation of the surveillance videos.  *See Coastal Bridge Co.*, 833 F. App'x. at 572–73.  We will, however, weigh the final factor despite this finding.

The third and final factor is relevance.  The relevance of the surveillance videos from the time the barges arrived until after capsizing is doubtful because B&J has access to the clip of the actual capsizing.  B&J fails to explain how the longer videos would be relevant in this action or support an adverse inference when it still has access to footage of the capsizing.  Additionally, B&J has not shown sufficient prejudice by the loss of the videos.  Thus, B&J has not sufficiently shown that Kiewit spoliated evidence.

### III.
#### CONCLUSION

For the reasons discussed above, the Motion for Finding of Spoliation is **DENIED**.

THUS DONE AND SIGNED in Chambers this 25th day of October, 2022.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE