## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

IN THE MATTER OF THE
COMPLAINT
OF B&J, INC., AS OWNER AND
OPERATOR OF THE M/V
ZOIE, FOR EXONERATION FROM
OR LIMITATION OF LIABILITY

CIVIL ACTION NO. 2:20-cv-686 c/w
20-cv-881

JUDGE CAIN

MAGISTRATE JUDGE KAY

## PRETRIAL STATEMENT

Counsel for Claimant DP Concrete Products, LLC ("DP Concrete") submits the following

Pretrial Statement to the Court and opposing Counsel.

1.     Jurisdiction:

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1333(1) because this

action is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of

Civil Procedure and the Supplemental Rules for Certain Admiralty and Maritime Claims.

2.     Pending Motions:

B&J, Inc.'s Motion to Modify and/or Clarify Order Restraining the Prosecution of Certain

Claims (R. Doc. 116).

3.     Brief Summary of Case:

In December of 2019, DP Concrete contracted with B&J, Inc.'s ("B&J") for B&J to deliver

concrete pilings manufactured by DP to its customer Kiewet Louisiana Company ("Kiewet") by

barge. B&J used its vessel the M/V ZOIE to transport the barges from DP Concrete's facility in

Vinton, Louisiana to Kiewet's operations base dock in Cameron, Louisiana. During a December

27-28, 2019 voyage, the M/V ZOIE pushed Barges M 868 and DH 9532 (chartered from Marmac,

LLC d/b/a McDonough Marine Service ("Marmac")), loaded with concrete pile, from Vinton to Cameron via transit through the Vinton Canal and the Intracoastal Waterway.

Barge DH 9532 was inspected by Gulfstream Marine Surveying, Inc. on September 23, 2019. All internal void spaces and compartments were found to be dry, with no indication of water ingress or significant damages besides normal wear and tear for a commercial-service flat deck freight barge. Similarly, Barge M 868 was inspected by Stansbury & Associates, LLC on September 16, 2019. All internal void spaces and compartments were found to be dry, with no indication of water ingress or significant damages besides normal wear and tear for a commercial-service flat deck freight barge.

Moreover, Barge M 868 was seaworthy when it was delivered to B&J as evidenced by the multiple prior voyages it was used for before the voyage at issue here without any incident. Specifically, on November 12, 2019, Tug ZOIE, owned/operated by B&J, was subcontracted by Roy Marine, LLC to transport Barge DH 9532 and Barge M 868 from the Port of Cameron, Louisiana to the DP Concrete facility in Vinton, Louisiana. This barge transport was carried out without incident. Additionally, between 15th November and 27th December 2019, Tug ZOIE completed seven transits of the Vinton Canal with Barge DH 9532 and Barge M 868, without incident.

During the December 27-28, 2019 voyage, the ZOIE's crew knowingly dragged the bottom of Barges M 868 and DH 9532 throughout the length of the Vinton Canal, and grounded the barges on multiple additional occasions. Despite knowingly grounding and dragging the bottom of the barges, B&J failed to take reasonable steps to investigate whether it had damaged the barges in order to protect the tow and cargo, including but not limited to checking the voids of the barges, or monitor/record the drafts for the barges. After dropping the barges off at Kiewet's operations

#101072580v1

base dock in Cameron, Barge M 868 took on water due to damage sustained during the grounding and dragging bottom events, capsized on January 2, 2020, lost all of her cargo, caused damage to Kiewet's equipment, and caused an additional loss of cargo from and damage to the other Barge DH 9532.[1]

These damages were sustained due to B&J's management's failure to equip the ZOIE with a depth sounder device in violation of Coast Guard regulations, and its failure to implement and enforce appropriate policies and procedures requiring the ZOIE's crew to (1) monitor/record the drafts and check the voids of the tow and (2) otherwise inspect the tow for damage/water intrusion after grounding and dragging the bottom of the barges.

B&J's policies and procedures do not contain any guidance or policy for inspecting barges prior to, during, or at the completion of a voyage.

In light of these failures by management, B&J is not entitled to limit its liability in this matter.

DP Concrete is seeking recovery of the following damages incurred to date:

| | |
|---|---|
| Survey leasing new barges | $5,240.00 |
| Tug moving barges post incident/delivering new barges | $61,075.37 |
| Pile and delivery | $452,693.63 |
| Marine chemist | $850.00 |

---

[1] Once the barges were delivered to Kiewet, Kiewet failed to adequately monitor them. Although it was running on a reduced holiday "skeleton crew" at the time, Kiewet had employees stationed at its facility in the vicinity of the docked barges. Kiewet's employees, however, failed to monitor the barges and report that they were listing and getting ready to lose their cargo. Moreover, Kiewet failed to inform DP Concrete that it was running on a "skeleton crew" at the time the barges were to be delivered, and that the barges would be docked at its facility for several days without anyone monitoring them.

#101072580v1

| | |
|---|---|
| Lighted buoys | $18,961.06 |
| Barges/towing for salvage | $30,430.00 |
| Disposing of pile | $66,443.00 |
| **TOTAL (excluding interest and costs):** | **$635,693.06** |

Marmac is claiming repair costs to its barges M 868 and DH 9532 in the amount of **$43,389.00** (excluding interest and costs).

4. <u>Issues of Fact:</u>

    a. Whether the Barges M 868 and DH 9532 were damaged and taking on water prior to being turned over to B&J and/or before December 27-28, 2019 voyage of the ZOIE.

    b. Whether B&J grounded and/or dragged the bottom of Barge M 868 such that it became damaged and took on water during the December 27-28, 2019.

    c. Whether B&J properly warned DP Concrete and/or Kiewet that it grounded and/or dragged the bottom of Barge M 868 such that it was damaged and took on water.

    d. Whether B&J properly checked the barges' voids and drafts after grounding and/or dragging their bottom.

    e. Whether B&J's management properly equipped the ZOIE with a depth sounder as required by Coast Guard regulations.

    f. Whether B&J's management failed to enact and/or enforce sufficient policies and procedures and provide sufficient training to require its personnel to (1) refrain from intentionally dragging the bottom of barges, and (2) if a grounding or dragging bottom

#101072580v1

event occurs, check the voids and drafts of the barges to make sure the barges are not damaged and taking on water.

g. Whether DP Concrete safely delivered concrete piles by barge to a material offloading dock at the Liberty MOF facility in fulfillment of its contractual obligations.

h. Whether Kiewet negligently failed to monitor the barges after they were docked at Kiewet's facility.

i. The amount of damages suffered by DP Concrete, Marmac and Kiewet due to B&J's actions.

5. <u>Issues of Law</u>:

**Limitation of Liability Act**

The Limitation of Liability Act ("the Act") "allows a vessel owner to limit liability for damage or injury, occasioned without the owner's privity or knowledge, to the value of the vessel or the owner's interest in the vessel." *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 446, 121 S.Ct. 993, 1000, 148 L. Ed. 2d 931 (U.S. 2001). While the Act created the right to seek limited liability, the actual procedure for a limitation action is set forth in Rule F of the Supplemental Rules for Certain Admiralty and Maritime Claims. *Id.* at 448, 121 S.Ct. at 1001. The Supreme Court explained the procedure in general terms, as follows:

> The district court secures the value of the vessel or owner's interest, marshals claims, and enjoins the prosecution of other actions with respect to the claims. In these proceedings, the court, sitting without a jury, adjudicates the claims. The court determines whether the vessel owner is liable and whether the owner may limit liability. The court then determines the validity of the claims, and if liability is limited, distributes the limited fund among the claimants. *Id.*

The court employs a two-part analysis to determine whether the shipowner is entitled to limitation. *See, e.g., Farrell Lines Inc. v. Jones,* 530 F.2d 7, 10 (5th Cir. 1976). First, as to each claimant, the court must decide whether the shipowner's negligence or conditions of unseaworthiness caused the accident. *Id.* On this question, the claimant bears the burden of proof. *Id.*

#101072580v1

If the claimants successfully establish the shipowner's liability, the court must then determine whether the shipowner had knowledge or privity of those acts or conditions which caused the accident. *Id.; see also* 46 U.S.C. § 30505(b) (formerly 46 U.S.C.App. §§ 183(a)). This is the "privity or knowledge" question and, on this question, the shipowner bears the burden of proof. *Farrell Lines Inc.,* 530 F.2d at 10.

The privity or knowledge question is critical because the shipowner can only limit its liability if the accident was occasioned or incurred *without* his privity or knowledge. "Privity or knowledge" implies some sort of complicity in the fault that caused the accident. *Brister v. A.W.I., Inc.,* 946 F.2d 350, 355 (5th Cir. 1991) (citations omitted). The privity or knowledge inquiry is fact intensive. *Id.* at 355-356 ("The question of 'privity or knowledge must turn on the facts of the individual case.'" (quoting *Gibboney v. Wright,* 517 F.2d 1054, 1057 (5th Cir. 1975))).

Privity or knowledge can be actual or constructive. *Carr v. PMS Fishing Corp.,* 191 F.3d 1, 4 (1st Cir. 1999) (citing *Spencer Kellogg & Sons, Inc. v. Hicks,* 285 U.S. 502, 512, 52 S.Ct. 450, 76 L. Ed. 903 (1932)). "[A] corporate shipowner may be deemed to have constructive knowledge if the unseaworthy or negligent condition could have been discovered through the exercise of reasonable diligence." *Brister,* 946 F.2d at 356. "A corporate owner, therefore, must overcome a presumption not only that its officers and managers had actual knowledge, but also that they should have known of the unseaworthy or negligent condition that caused the injury." *Id.* (citing *In re Patton-Tully Transp. Co.,* 797 F.2d 206, 211 (5th Cir. 1986)).

Supervisory shore personnel are managing agents of the corporate vessel owner, and their knowledge and privity "is sufficient to charge a corporation." *China Union Lines*, 364 F.2d at 787; *Pennzoil,* 943 F.2d at 1474 (denying limitation based on the knowledge of "shore-based managing officials"). "When the shipowner is a corporation, knowledge 'is judged not only

by what the corporation's managing officers actually knew, but also by what they should have known with respect to conditions or actions likely to cause the loss.'" *In re Savage Inland Marine*, 539 F. Supp. 3d 629, 654 (E.D. Tex. 2021) (quoting *Pennzoil Producing Co. v. Offshore Exp., Inc.*, 943 F.2d 1465, 1473-74 (5th Cir. 1991)); *see also In re Omega Protein, Inc.*, 548 F.3d 361, 371 (5th Cir. 2008). "Privity or knowledge is therefore deemed to exist if the shipowner has the means of obtaining knowledge, or if it would have obtained the knowledge by reasonable inspection." *In re Savage Inland Marine*, 539 F. Supp. 3d at 654 (quoting *China Union Lines Ltd. v. A.O. Andersen & Co.*, 364 F.2d 769, 787 (5th Cir. 1966)).

"Generally, a finding of negligence indicates complicity in the cause of the accident sufficient to make limitation unavailable…." *Id.* (citations omitted). Moreover, the shipowner has a nondelegable duty to man the ship with a qualified master and crew. *Empire Seafoods, Inc. v. Anderson,* 398 F.2d 204, 210 (5th Cir. 1968).

DP Concrete contends that B&J is unable to legally limit its liability under the Act based on the aforementioned facts and legal requirements. This will be an issue of law to be determined at trial.

**Maritime Negligence**

"[N]egligence is an actionable wrong under general maritime law." *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005). The elements of a maritime negligence cause of action are essentially the same as those for non-admiralty negligence claims under the common law. *See id*. To state a claim for relief for negligence under maritime law, the "plaintiff must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by the plaintiff, and a causal connection between the defendant's conduct and the

#101072580v1

plaintiff's injury." *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (cleaned up).

"A person who voluntarily assumes a duty owed by another and then breaches that duty becomes liable to one who is injured as a result of the breach." *In re Savage Inland Marine*, 539 F. Supp. 3d 629, 649 (E.D. Tex. 2021) (citing *Tidewater Marine v. Sanco Int'l, Inc.*, 113 F. Supp. 2d 987, 999 (E.D. La. 2000); *Miss Janel, Inc. v. Elevating Boats, Inc.*, 725 F. Supp. 1553, 1567 (S.D. Ala. 1989); *Indian Towing Co. v. United States*, 350 U.S. 61, 76 S. Ct. 122, 100 L. Ed. 48 (1955)).

DP Concrete contends that B&J was negligent in its tow of Barges M 868 and DH 9532 based on the aforementioned facts. This will be an issue of law to be determined at trial.

**Duties of a Tower**

Duty to Exercise Reasonable Care

The principles of law relating to towage are well established. A tug owes a duty to exercise reasonable care and maritime skill, as prudent navigators employ in the performance of similar services. *Stevens v. The White City*, 285 U.S. 195, 76 L. Ed. 699, 52 S. Ct. 347 (1932). Reasonable care and maritime skill necessitate that attention be given to the special circumstances involved in undertaking a specific task. The degree of care required of a tug is measured with reference to the character of the tow and the condition of the seas and weather. *National Transport Corp. v. Tug ABQUAIQ,* 418 F.2d 1241 (2d Cir. 1968); *M. P. Howlett, Inc. v. The Tug DALZELLIDO,* 324 F. Supp. 912 (S.D.N.Y. 1971).

A tower's duty to act reasonably includes making wise decisions about the handling of the tow with respect to the weather, approaching vessels, and water conditions. *M.P. Howlett, Inc. v. Tug Michael Moran*, 425 F.2d 619 (2d Cir. 1970). It is well-accepted under the law that "[t]he master of a tug towing an unmanned barge must know all conditions essential to the safe accomplishment of

the undertaking or voyage." *Ryan Walsh Stevedoring Co. v. James Marine Serv., Inc.*, 557 F.Supp. 457, 461 (E.D. La. 1983) (additional citations omitted). "This knowledge includes the depth of the water, the ordinary obstructions, the state of the tides and water levels in the channel, and the clearance of bridges to be negotiated." *Id.*

Further, tug "[c]aptains [are] held to a standard of prudent navigation, including the knowledge they should have had." *Id.*

A tower is negligent, and therefore unable to limit its liability, if it "failed to exercise reasonable care or implement and enforce proper pre-voyage planning requirements[, and such] acts and omissions were substantial factors and proximate causes in creating the unsafe conditions that led to [claimant's] injuries." *In re Savage Inland Marine*, 539 F. Supp. 3d 629, 650 (E.D. Tex. 2021).

DP Concrete contends that B&J failed to exercise reasonable care in its tow of Barges M 868 and DH 9532 based on the aforementioned facts. This will be an issue of law to be determined at trial.

<u>Duty to Inspect Tow</u>

"A tug must make a reasonable inspection of her tow before undertaking a voyage. The tug master, moreover, must obtain knowledge from personal cognizance, or avail himself of the means of knowledge, of conditions likely to produce or contribute to a loss, unless appropriate means are adapted to prevent it." *Id.* (internal citations omitted). "A tug has a duty to inspect the barges in her tow and keep those barges under close observation while under tow." *Albany Ins. Co. v. Bengal Marine, Inc.*, Civil Action No. 85-5903, 1987 U.S. Dist. LEXIS 6455, at *10 (E.D. La. Apr. 24, 1987); *see also Aiple Towing Company, Inc. v. M/V LYNNE E. QUINN*, 534 F. Supp. 409 (E.D. La. 1982) (same); *McDonough Marine Service, Inc. v. M/V ROYAL STREET*, 465 F. Supp. 928

#101072580v1

(E.D. La. 1979) (same); *Dwyer Lighterage, Inc. v. Christie Scale Corp.*, 1951 A.M.C. 46 (E.D.N.Y. 1951) (same); *A. E. Staley Mfg. Co. v. Porto Rico Lighterage*, 323 F. Supp. 27 (E.D.La. 1970), aff'd, 438 F.2d 1 (5th Cir. 1971) (same).

"Prudent seamanship further requires that the crew of a tug conduct continued inspections of the . . . void tanks on a barge to insure that they are secure and dry …." *Albany Ins. Co. v. Bengal Marine, Inc.*, Civil Action No. 85-5903, 1987 U.S. Dist. LEXIS 6455, at *10-11 (E.D. La. Apr. 24, 1987) (citing *Aiple Towing Company, Inc.,* 534 F. Supp. 409).

When a barge owner supplies a seaworthy barge that subsequently sustains an unexplained leak, negligence on the part of the tower or fleeter will be presumed. *The Harper No. 145*, 42 F.2d 161 (2d Cir. 1930).

DP Concrete contends that B&J failed to adequately inspect Barges M 868 and DH 9532 during the voyage at issue in this proceeding based on the aforementioned facts. This will be an issue of law to be determined at trial.

Duty to Provide a Seaworthy Towboat

A tower warrants the seaworthiness of its towing vessel to those whose barges it tows. This warranty means the vessel must be reasonably fit for its intended purpose. *See Vessel Engineering & Dev. Corp. v. Barge ZPC 104*, 1989 A.M.C. 2789, 1989 U.S. Dist. LEXIS 1081 (D. Ore. 1989). Fitness includes adequate power to perform the tow safely under all conditions that could reasonably be anticipated. *Harbor Tug &Barge, Inc. v. Belcher Towing Co*., 733 F.2d 823 (11th Cir. 1984).

Pursuant to 33 CFR 164.72: Navigational-safety equipment, charts or maps, and publications required on towing vessels:

> (a) Except as provided by § 164.01(b), each towing vessel must be
> equipped with the following navigational-safety equipment:

…

(5) Echo depth-sounding device. By August 2, 2001, an echo depth-sounding device readable from the vessel's main steering station, unless the vessel engages in towing exclusively on Western Rivers.

The United States Coast Guard District 8 issued a "Policy Letter" exempting vessels such as Tug ZOIE, operating in inland waters, from the depth sounder requirement. However, on April 6, 2019, the United States Coast Guard District 8 formally rescinded this "Exemption for Towing Vessels on Inland Waters from Carrying Echo Depth-sounding Devices" contained in its Policy Letter.

DP Concrete contends that the ZOIE was unseaworthy at the time of the voyage in question based on the aforementioned facts. This will be an issue of law to be determined at trial.

## The Pennsylvania Rule

The Pennsylvania rule is "a presumption in admiralty law that a statutory violation by a party to a collision is a cause of the damage unless it is established that the violation could not have caused or contributed to the collision." *American River Trans. Co. v. Kavo Kaliakra SS.* 148 F.3d 446, 449 (5th Cir. 1998) (citing *The Steamship Pennsylvania v. Troop.* 86 U.S. 125, 22 L. Ed. 148 (1873)). The rule states:

> [W]hen . . . a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions, it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.

*The Pennsylvania* at 136.

The application of the Pennsylvania Rule is not limited to maritime collisions; it applies in other situations as well. *See United States v. Nassau Marine*, 778 F.2d 1111, 1116 (5th Cir. 1985); *Durden v. Exxon Corp.*, 803 F.2d 845, 850 n.14 (5th Cir. 1986); *see also Albany Ins. Co. v. Bengal*

#101072580v1

*Marine, Inc.*, Civil Action No. 85-5903, 1987 U.S. Dist. LEXIS 6455, at *14 (E.D. La. Apr. 24, 1987) ("[T]he Pennsylvania Rule is applicable to non-collision cases."); *Candies Towing Company, Inc. v. M/V B&C ESERMAN*, 673 F.2d 91 (5th Cir. 1982).

DP Concrete contends that the statutory violations of B&J and the ZOIE give rise to the invocation of the Pennsylvania Rule. This will be an issue of law to be determined at trial.

**The Oregon Rule**

"When a moving vessel collides with a fixed object, there is a presumption that the moving vessel is at fault." *Am. Commer. Barge v. Alter Barge Line, Inc.*, No. 01-933, 2002 U.S. Dist. LEXIS 19189, at *4 (E.D. La. Oct. 3, 2002) (citing *The Oregon*, 158 U.S. 186, 197, 39 L. Ed. 943, 15 S. Ct. 804 (1895)). "This presumption [also] applies in cases where a vessel grounds its tow." *Id.* (citing *Mid America Transportation Company, Inc. v. National Marine Service, Inc*, 497 F.2d 776 (8th Cir. 1974); *Consolidated Grain and Barge Co. v. General Intermodal Logistics Corp.*, 548 F. Supp. 424, 428 (E.D.Mo. 1982)). "The presumption may be overcome, however, if the moving vessel demonstrates that the collision, or grounding as in this case, was caused by an act of God, the negligence of a third party, or the fault of the stationary object." *Id.* (citing *The Oregon*, 158 U.S. 186, 197, 39 L. Ed. 943, 15 S. Ct. 804 (1895); *Bunge Corp. v. M/V Furness Bridge*, 558 F.2d 790, 794-95 (5th Cir. 1977)).

DP Concrete contends B&J's actions in intentionally dragging the bottom of the barges in its tow and its act of grounding the barges give rise to the invocation of the Oregon Rule. This will be an issue of law to be determined at trial.

#101072580v1

**Apportionment of Fault**

In maritime tort cases where more than one party is responsible, courts apportion liability based on fault according to the rules of comparative negligence. *In re Savage Inland Marine*, 539 F. Supp. 3d at 655; *United States v. Reliable Transfer Co.*, 421 U.S. 397, 409-11 (1975).

DP Concrete contents that all fault should be apportioned to B&J and/or Kiewet for the damages sustained in this matter based on the aforementioned facts. This will be an issue of law to be determined at trial.

**Interest**

The general rule in admiralty is to award prejudgment interest from the date of casualty. *Mobil Oil Corporation v. Tug Pensacola,* 472 F.2d 1175 (5th Cir. 1973).

DP Concrete contends that it should be awarded prejudgment interest from the date of casualty. This will be an issue of law to be determined at trial.

**Breach of Contract**

DP Concrete contends that if fulfilled any and all contractual obligations owed to Kiewet. This will be an issue of law to be determined at trial.

DP Concrete further contends that it is not liable to B&J for any allegedly unpaid invoices due to B&J's actions and inactions that caused DP Concrete to suffer damages that far outweigh the amount of its allegedly unpaid invoices. This will be an issue of law to be determined at trial.

6.  <u>Lists of Witnesses</u>:  Please list all witnesses, except for impeachment witnesses; "will call" witnesses must be identified with particularity. Include names, telephone numbers, addresses, and email addresses, if available.

**Fact Witnesses:**

**<u>DP Concrete Products, LLC</u>**

**WILL CALL:**

1. Ryan Price, Executive Vice President of Dunham Price Group, LLC, 210 Mike Hooks Rd, Westlake, LA 70669, (337) 433-3900, ryan@dunhamprice.com.

**MAY CALL:**

2. Rob Price, III – Chief Executive Officer of Dunham Price Group, LLC, 210 Mike Hooks Rd, Westlake, LA 70669, (337) 433-3900.

3. Jody Singletary, Vice President of Concrete Operations, DP Concrete Products, LLC, 210 Mike Hooks Rd, Westlake, LA 70669, (337) 433-3900.

4. Eric Hebert, Manager of DP Concrete Products, LLC, 210 Mike Hooks Rd, Westlake, LA 70669, (337) 433-3900.

5. Stacy Berlin, Logistics, DP Concrete Products, LLC, 210 Mike Hooks Rd, Westlake, LA 70669, (337) 433-3900.

6. Bobby Jordan, Equipment Manager, DP Concrete Products, LLC, 210 Mike Hooks Rd, Westlake, LA 70669, (337) 433-3900.

7. David Godsey, Material Handling Manager, Dunham Price Group, LLC, 210 Mike Hooks Rd, Westlake, LA 70669, (337) 433-3900.

8. Perry Sonnier, Crane Operator, DP Concrete Products, LLC, 210 Mike Hooks Rd, Westlake, LA 70669, (337) 433-3900.

9. Lionel Molina, Crane Operator, DP Concrete Products, LLC, 210 Mike Hooks Rd, Westlake, LA 70669, (337) 433-3900.

10. Brent LeJeune, VP Concrete Operations, Dunham Price Group, LLC, 210 Mike Hooks Rd, Westlake, LA 70669, (337) 433-3900.

**Marmac, LLC d/b/a McDonough Marine Service**

**WILL CALL**

11. David Beerbohm, Maintenance Director, 3500 North Causeway Blvd., Ste. 900, Metairie, LA 70002, (888) 569-5929.

**MAY CALL**

12. Patrick Stant, President, 3500 North Causeway Blvd., Ste. 900, Metairie, LA 70002, (888) 569-5929.

13. Dickie Torbert, Maintenance Manager, 3500 North Causeway Blvd., Ste. 900, Metairie, LA 70002, (888) 569-5929.

**B&J, Inc.**

#101072580v1

## WILL CALL

14. Captain Anthony Verret, Captain, 40602 E Lakeshore Rd, Gueydan, LA 70542, (337) 774-9287.

15. Captain Kenneth Verdin, Captain, 40602 E Lakeshore Rd, Gueydan, LA 70542, (337) 774-9287.

16. Kirk Romero, Deckhand, 40602 E Lakeshore Rd, Gueydan, LA 70542, (337) 774-9287.

17. Brenda Boudreaux, Secretary Treasurer, 7871 Highway 27, Bell City, Louisiana 70630, (337) 774-9287.

18. Jeffrey Boudreaux, President, 7871 Highway 27, Bell City, Louisiana 70630, (337) 774-9287.

## MAY CALL

19. Paul Fruge, Safety Consultant with iSafe, 1011 N. Lake Arthur Ave. Ste. A, Jennings, LA 70546.

**Kiewit Louisiana Company**

## MAY CALL

20. Jonathan Kempfer, 3850 N Causeway Blvd, Metairie, LA 70002.

21. William "Billy" Ours, 3850 N Causeway Blvd, Metairie, LA 70002.

22. Ace Duyao, 3850 N Causeway Blvd, Metairie, LA 70002.

23. Shane McDougall, 3850 N Causeway Blvd, Metairie, LA 70002.

24. Eric Thoendel, 3850 N Causeway Blvd, Metairie, LA 70002: Will testify about Kiewet's actions and inactions after Barges M 868 and DH 9532 were delivered to its Liberty MOF terminal.

25. Timothy Johnson, 3850 N Causeway Blvd, Metairie, LA 70002: Will testify about Kiewet's actions and inactions after Barges M 868 and DH 9532 were delivered to its Liberty MOF terminal.

26. Mike King, 3850 N Causeway Blvd, Metairie, LA 70002: Will testify about Kiewet's actions and inactions after Barges M 868 and DH 9532 were delivered to its Liberty MOF terminal.

27. Adam Pretcher, 3850 N Causeway Blvd, Metairie, LA 70002: Will testify about Kiewet's actions and inactions after Barges M 868 and DH 9532 were delivered to its Liberty

MOF terminal.

28. Jermaine Porter, 3850 N Causeway Blvd, Metairie, LA 70002: Will testify about Kiewet's actions and inactions after Barges M 868 and DH 9532 were delivered to its Liberty MOF terminal.

29. Miriam Hinojosa, 3850 N Causeway Blvd, Metairie, LA 70002: Will testify about Kiewet's actions and inactions after Barges M 868 and DH 9532 were delivered to its Liberty MOF terminal.

**Other Fact Witnesses**

**WILL CALL**

30. Adam Barras, 602 Kem St., Patterson, LA 70392: Will testify about statements made by Capt. Anthony Verrett regarding the navigation of Barges M 868 and DH 9532.

**MAY CALL**

31. Howard Held, Surveyor, Qubed Limited, L.C., P.O. Box 430, Abbeville, LA 70511: Will testify about his participation in one or more inspection of Barges M 868 and DH 9532.

32. ENS Marcus J. Thompson – Senior Investigating Officer for Coast Guard MSU Lake Charles

    U.S. Coast Guard MSU Lake Charles
    Investigations Division
    127 West Broad Street, Suite 200
    Lake Charles, LA 70601
    337-491-7811
    Marcus.J.Thompson@uscg.mil

    Will testify about the USCG's response to the incident.

33. LT William Hickey – Chief, Prevention Department for Coast Guard MSU Lake Charles

    U.S. Coast Guard MSU Lake Charles
    Investigations Division
    127 West Broad Street, Suite 200
    Lake Charles, LA 70601
    Office: 337-491-7804
    Mobile: 337-912-0082
    William.Hickey@uscg.mil

    Will testify about the USCG's response to the incident.

34. Hugh Hamilton

U.S. Coast Guard MSU Lake Charles
127 West Broad Street, Suite 200
Lake Charles, LA 70601
Hugh.M.Hamilton@uscg.mil

Will testify about the USCG's response to the incident.

35. Any and all fact witnesses listed on the Witness Lists of Kiewet and/or B&J.

36. All witnesses listed in the initial disclosures and written discovery responses of Kiewet and/or B&J.

37. Witnesses needed for impeachment.

**Expert Witnesses**

**WILL CALL**

38. Capt. Marc Fazioli, 3D Marine USA, Inc., expert in marine navigation, will testify about issues related to B&J's navigation of the M/V ZOIE and Barges M 868 and DH 9532.

39. M.P. Singh, 3D Marine USA, Inc., will testify about the damages claimed by the Parties.

40. James E. Stansbury, III, Surveyor, Stansbury & Associates, LLC, expert marine surveyor, will testify about the condition of Barges M 868 and DH 9532 pre-incident and post-incident.

7. <u>Exhibits:</u>  All exhibits should be made available to opposing counsel as soon as possible. All objections to authenticity or admissibility must be made 14 days prior to trial.

1. Correspondence and contract documents between DP Concrete and B&J: DPCON 1-147

2. Correspondence and contract documents between DP Concrete and Marmac: DPCON 148-401

3. USCG Incident Response Documentation: DPCON 402-578

4. Kiewet's Notice of Marine Incident dated Jan. 8, 2020: DPCON 579-580

5. PortVision Screenshots (DPCON00000582-584)

6. M868 Preliminary Damage Survey dated January 3, 4 and 5, 2020 (DPCON00000618-629)

7. M868 Field Damage Survey dated January 22, 2020 (DPCON00000630-647)

8. M868 Bottom Plate Survey dated February 6, 2020 (DPCON00000648-657)

#101072580v1

9. M868 Photographs of Damage Survey dated February 14, 2020 (DPCON00000658-665)

10. DH9532 Preliminary damage Survey dated January 4 and 5, 2020 (DPCON00000591-600)

11. DH9532 Field Damage Survey dated January 15, 2020 (DPCON00000601-617)

12. USCG Memorandum dated April, 9, 2019, Subj: Review of D8 Policy Letters

13. ZOIE Logs (DPCON00000585-590)

14. Statement of Eric Hebert, DPCON 713

15. Pile Shop Drawing, DPCON 714

16. Barge Tables, DPCON 715-716

17. Barge Photograph, DPCON 717

18. Concrete Pile Salvage Documents, DPCON 718-726

19. Post-Incident Survey of barge M868 (DPCON00000630-647);

20. Post-Incident Survey of barge DH9532 (DPCON00000601-617);

21. Quote from Essi Corporation (DPCON00000741-742);

22. Invoices from Essi Corporation (DPCON00000747-748);

23. Invoice from Third Coast Chemists (DPCON00000743);

24. Invoice from Independent Diving Services (DPCON00000744);

25. Invoice from B&J, Inc. (DPCON00000746);

26. Invoice from Caillou Island Towing (DPCON00000745);

27. Anders Dive Report (DPCON00000727-740);

28. Photographs provided to DP Concrete by Ace Duyao on January 2, 2020, DPCON 791-797

29. DP Concrete Damages Summary and support documents (DPCON00000749-790);

30. All other documents that reflect DP Concrete's damages that were produced in discovery.

31. Photographs taken by Eric Hebert on January 3 and 4, 2020, DPCON 798-809

32. LAD Services Invoice for M868 Inspection, MCDONOUGH 938

33. LAD Services Invoice for M868 repair of damaged areas, MCDONOUGH 936

34. NVI (gauging) invoice

35. Stansbury invoice for M868 Damage survey, MCDONOUGH 924-925

36. LAD Services Invoice for DH9532 repair, MCDONOUGH 937

37. Stansbury Invoice for damage survey for DH9532, MCDONOUGH 922-923

38. Barge Repair Invoices/Survey Reports for M868 and DH9532, MCDONOUGH 1-870, 877-902, 904-915, 921.

39. All other documents that reflect Marmac's damages that have been produced in discovery.

40. Barge Tables, MCDONOUGH 871, 916-918.

41. Barge Drawing, MCDONOUGH 872

42. USCG Bill of Sale, DH 9532, MCDONOUGH 873-874

43. DH 9532, Certificate of Documentation, MCDONOUGH 875-876

44. Barge Drawing, M868, MCDONOUGH 903

45. Certificate of Liability Insurance, MCDONOUGH 919-920

46. McDonough/McGriff Correspondence, MCDONOUGH 926-935

47. McDonough/Kiewet/DP Concrete correspondence and attachments, MCDONOUGH 939-1165

48. All photographs taken at inspections of Barges M868 and DH9532 produced by James Stansbury and other surveyors in attendance.

49. B&J's Deckhand Manual

50. B&J's Health and Safety Handbook, BJ 313-379

51. B&J's Safety Rules and Regulations, BJ 289-312

52. M/V ZIOE Maintenance Logs, BJ 686-689

53. M/V ZOIE Master Logs, BJ 278-283

54. M/V ZOIE Voyage Log, BJ 189-194

55. B&J's Safety Book for Boat Crew, BJ 648-665

56. B&J Crew Training Documents, BJ 634-665

#101072580v1

57. B&J Towing Safety Management System, BJ 380-633

58. B&J Voyage Plan, BJ 692-693

59. B&J Vessel Orientation Documents, BJ 666-677

60. Survey Reports of Stansbury & Associates for Barge M868 and DH9532

61. M/V ZOIE USCG Uninspected Towing Vessel Examination, BJ 678-685

62. Correspondence between B&J and DP Concrete, attaching invoices and logs, BJ 199-275

63. Letter from Dunham Price dated 1/7/2020 to B&J from Heather Kirk Trosclair, Esq. (BJ 000001)

64. Joint Field Damage Survey Reports:

Dated January 3-5, 2020 (BJ 000002-000018)
Dated January 14-15, 2020 (BJ 000019-000035)
Dated January 22, 2020 (BJ 000036-000053)
Dated January 28-February 6, 2020 (BJ 000054-000062)
Dated July 11, 2020 (BJ 000063-000092)

65. Mitsui Sumitomo Marine Management (USA) Inc., policy number OHM4510057 (BJ 000093-000152)

66. Affidavit of Value from Howard Held dated 5/19/20 (BJ 000153-000154)

67. Letter from B&J dated 12/8/20 to Kiewit from Bill Schwartz (BJ 000155-000156)

68. Letter from B&J dated 1/9/2020 to Dunham Price Group and McDonough Marine from Bill Schwartz (BJ 000157-000158)

69. Invoice to Dunham Price for ZOIE dated 11/15/2019 (invoice #5324) with vessel logs for services November 11-13, 2019 (BJ 000159-000163)

70. Invoice to Dunham Price for ZOIE dated 11/20/19 (invoice #5329) with vessel logs for services November 14-16, 2019 (BJ 000164-000168)

71. Invoice to Dunham Price for ZOIE dated 11/26/19 (invoice #5331) with vessel logs for services November 19-20, 2019 (BJ 000169-000172)

72. Invoice to Dunham Price for ZOIE dated 12/11/19 (invoice # 5336) with vessel logs for services November 21-23, 2019 (BJ 000173-000177)

73. Invoice to DP Concrete for ZOIE dated 12/18/19 (invoice #5347) with vessel logs for services December 10-11, 2019 (BJ 000178-000181)

#101072580v1

74. Invoice to DP Concrete for ZOIE dated 12/18/19 (invoice #5348) with vessel logs for services December 13-15, 2019 (BJ 000182-000185)

75. Invoice to DP Concrete for ZOIE dated 12/26/19 (invoice #5351) with vessel logs for services December 20-21, 2019 (BJ 000186-000188)

76. Invoice to DP Concrete for ZOIE dated 12/30/19 (invoice #5354) with vessel logs for services December 27-29, 2019 (BJ 000189-000194)

77. Dunham Price quote 1/3/20 (BJ 000195)

78. DP Concrete quote 12/11/19 (BJ 000196)

79. Correspondence with Dunham Price regarding barge delivery instructions dated 12/20/19 and 12/30/19 (BJ 000197-000198)

80. B&J Invoice to DP Concrete for Incident Voyage (DPCON 1252)

81. Any and all admissible exhibits on the exhibit lists and/or pretrial statements of Kiewet and B&J.

82. All admissible documents attached as exhibits to depositions taken in this matter and all admissible documents produced in discovery in this matter.

83. Documents needed for impeachment.

8.     Depositions:  List all depositions which may be offered in whole or in part.

       DP Concrete plans to offer the depositions of the following B&J witnesses, in their entirety,

in the event that any of them are unavailable for trial:

1.  Captain Anthony Verret, Captain, 40602 E Lakeshore Rd, Gueydan, LA 70542, (337) 774-9287.

2.  Captain Kenneth Verdin, Captain, 40602 E Lakeshore Rd, Gueydan, LA 70542, (337) 774-9287.

3.  Kirk Romero, Deckhand, 40602 E Lakeshore Rd, Gueydan, LA 70542, (337) 774-9287.

4.  Brenda Boudreaux, Secretary Treasurer, 7871 Highway 27, Bell City, Louisiana 70630, (337) 774-9287.

5.  Jeffrey Boudreaux, President, 7871 Highway 27, Bell City, Louisiana 70630, (337) 774-9287.

6.  30(b)(6) depositions of B&J and Kiewet.

9.  <u>Stipulations</u>:

DP Concrete and Kiewet have agreed in principle to stipulate to the admissibility and authenticity of DP Concrete's and Kiewet's exhibits that will be used to prove their damages. DP Concrete plans to follow up with Kiewet about this stipulation and further stipulations regarding additional uncontested facts in the following days, and will update the Court as soon as additional stipulations are reached. B&J has to date declined to agree to any stipulations.

10.  <u>Estimated Length of Trial</u>:  3-4 days.

11.  <u>Other Matters that Should be Made Known to the Court</u>:

None at this time.

Respectfully submitted,

<u>/s/ Tarak Anada</u>
JEFFERSON R. TILLERY (17831)
TARAK ANADA (31598)
Jones, Walker LLP
201 St. Charles Avenue
New Orleans, Louisiana 70170-5100
(504) 582-8322 Telephone
(504) 589-8322 Facsimile
jtillery@joneswalker.com
tanada@joneswalker.com

***Attorneys for DP Concrete Products, LLC and Marmac, LLC d/b/a McDonough Marine Service***

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the above and foregoing document has been forwarded to all counsel of record by filing in the Court's CM/ECF electronic filing system this 6th day of March, 2023.

_/s/Tarak Anada_____
TARAK ANADA

#101072580v1